# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## HAIRSTON V. HAIRSTON.

### January 21, 1915:

### Absent, Keith, P., and Kelly, J.*

1. APPEAL AND ERROR—*Failure to Pay Counsel Fees—Divorce.*—Failure to pay an attorney's fee decreed against the husband in a suit for divorce, where he has intimated an intention to appeal from a decree denying him a divorce, is no ground for dismissal of the husband's appeal. The decree for the fee can be enforced by execution or other legal proceeding, but not by a denial of the husband's constitutional and statutory right of appeal.

2. JUDGMENTS—*Res Judicata—Extrinsic Evidence.*—In order that a judgment in one suit shall be conclusive between the same parties in a second suit touching the same question, it must appear, either upon the face of the record or by extrinsic evidence, that the precise question was raised and determined in the former suit. While extrinsic evidence is admissible to show the identity of the question, if there is any uncertainty on this head in the record, the whole matter is at large and open to a new contention.

3. DIVORCE—*Former Suit—Res Judicata.*—Where a suit for divorce on the ground of desertion for three years has been dismissed, and it does not appear from the record or extrinsic evidence on what ground it was dismissed, but the evidence shows that three years had not elapsed between the date of the desertion and the institution of the suit, as it may have been dismissed for this reason, the complainant is not barred from subsequently bringing another suit for the same cause if the desertion continues.

4. DIVORCE—*Desertion—Case in Judgment.*—The evidence in the case in judgment sustains the charge of the complainant that his wife had wilfully and without sufficient cause deserted him for more than three years.

5. DIVORCE—*Desertion—What Constitutes — Justification.* — Desertion is a breach of matrimonial duty and consists of the actual breaking off of the matrimonial cohabitation, coupled with intent to desert in the mind of the offender. It can

---

*Argued before Judge Kelly's term began.

only be justified by showing such conduct on the part of the deserted party as would entitle the other to a divorce *a mensa.* Nothing short of this will justify a wilful desertion, or a continuance of it.

Appeal from a decree of the Circuit Court of Henry county. Decree for the defendant. Complainant appeals.

*Reversed.*

The opinion states the case.

*W. M. Peyton* and *Samuel A. Anderson,* for the appellant.

*Jno. W. Carter, Jr.,* for the appellee.

CARDWELL, J., delivered the opinion of the court.

Appellant and appellee intermarried December 26, 1900, and lived together in Henry county, Virginia, until the year 1907. In January, 1906, appellee went to her father's in the same county to be confined by reason of the birth of her first child. The child was born on March 10, 1906, and in May following appellee and her child were sent for by appellant and they came at once to appellant's home, where they remained until September, 1907, when appellee returned to her father's home, taking her child with her, and since that time she has not returned to appellant's home, nor have the parties lived together as man and wife, or as such had any sort of intercourse or communication with each other.

In March, 1909, appellant filed his bill of complaint against appellee, alleging that she had wilfully abandoned and deserted him in March, 1906, with the intent of never returning, and praying a divorce from her *a vinculo matrimonii,* and for general relief.

Appellee answered the bill fully, and in denial of its charges. Depositions were taken for both parties, and on December 10, 1910, the cause was heard on the pleadings and the depositions taken and filed; whereupon, the court entered its decree, which, omitting the formal parts, is as follows: "On consideration whereof, the court being of opinion that the plaintiff is not entitled to a divorce as prayed for in his bill, doth so decide and declare, and doth adjudge, order and decree that the bill in this cause be dismissed at the plaintiff's costs."

At the first August rules, 1911, appellant filed his second bill of complaint against appellee, alleging that she had abandoned and illegally deserted him, having "left him about four or five years ago and has never returned," the prayer of this bill being also for a divorce *a vinculo matrimonii.* This second bill, it may be said, is practically in the language of the first, and the grounds upon which the divorce is asked are the same—that is, abandonment and desertion of the complainant on the part of the defendant. Both bills call upon the defendant to answer, but waive oath thereto.

Appellee, the defendant below, answered the bill in this cause denying each and every allegation and pleading *res adjudicata,* filing with her answer and plea, as a part thereof, the bill, answer, depositions of witnesses and the final decree in the first suit, but neither testified herself nor took the deposition of any other person to prove any of the very many statements contained in her answer, or to contradict the evidence given by the appellant and his witnesses.

Appellant gave his own deposition and took and filed the depositions of other witnesses to prove the wilful desertion of him by appellee for a period of more than three years, as charged in his bill, and at the April term of the court, 1912, the decree from which this appeal is taken was en-

tered, dismissing the bill at appellant's cost, and upon his counsel indicating their intention to appeal from the decree an additional fee of $50.00 was allowed to appellee's attorney, to be paid by appellant, and judgment entered therefor, and for which the attorney was given leave to issue execution. The decree sustains appellee's plea of *res adjudicata,* but proceeds further to say: "Even though it be conceded, which it is not, that the plea of *res adjudicata* has not been sustained, yet the court is further of opinion that the plaintiff has wholly failed to sustain his bill for desertion by such proof as would entitle him to the relief sought, and that his bill should be dismissed."

Upon the calling of the case for hearing in this court, appellee, by her counsel, submitted a motion to dismiss it from the docket or to deny appellant a hearing thereon, on the ground that the fee of $50.00 allowed appellee's attorney in the decree appealed from had not been paid. In support of this motion no authority has been cited by counsel, and we know of none supporting it. The remedy, if any, that the attorney for appellee has for the collection of the fee allowed him in the decree, and for which a judgment was entered, lies in the right to enforce, either by execution or other proceeding against appellant provided by law, and not by a denial of appellant's constitutional and statutory right to a hearing of the appeal allowed him by this court, and which brings under review here the entire decree.

The first contention of appellant upon the appeal is that appellee's plea of *res adjudicata* should have been rejected. In the opinion of the learned judge of the circuit court, in writing and made a part of the record, giving his reasons for the decree appealed from, he says: "The defense of *res adjudicata* made by the answer in this case is sufficiently supported by the production of the record of the former suit between the same parties, touch-

ing the same matter, and showing a final decree therein on the merits." Citing *Miller* v. *Miller*, 92 Va. 196, 23 S. E. 232.

In this view we are unable to concur, as the case cited does not support it, being wholly different in its facts vouched by the record filed in support of the plea of *res adjudicata*, from the case here. In that case, the record in the prior suit and the final decree disposing of it, left no room to question that this final disposition of the first case was upon its merits, including every question presented by the pleadings in the record, except as to the charge of adultery in the bill, in support of which there was no proof whatever; while in the case in judgment the decree in the prior case could not have been upon the merits thereof the same as in this second suit, but could only have been that the plaintiff was not entitled to the divorce *a vinculo matrimonii,* upon the ground of desertion for the reason that the proof showed that the desertion had not continued for the statutory period of three years, for in that case the preponderance of the proof was that appellee had, and without sufficient or reasonable cause, · deserted appellant; there being nothing in the record of the first, nor any evidence in the second, of these suits between the parties which shows that the decree in the first suit was not based solely on the ground that three years had not elapsed from the date of the desertion and abandonment of the home of appellant by appellee to the date of the suit.

The opinion by Burks, J., in *Christman's Admx.* v. *Harman, et als,* 29 Gratt. (70 Va.) 494, 26 Am. Rep. 387, quotes from the opinion of the Supreme Court of the United States in *Russell* v. *Place,* 94 U. S. 606, 24 L. Ed. 214, as follows: "It is undoubtedly settled law that a judgment of a court of competent jurisdiction upon a question directly involved in one suit, is conclusive as to that question in another suit between the same parties.

But to this operation of the judgment it must appear, either upon the face of the record or be shown by extrinsic evidence, that the precise question was raised and determined in the former suit. If there be any uncertainty on this head in the record, as for example, if it appear that several distinct matters may have been litigated, upon one or more of which the judgment was rendered, the whole subject matter of the action will be at large and open to a new contention, unless the uncertainty be removed by extrinsic evidence showing the precise point involved and determined. To apply the judgment and give effect to the adjudication actually made, when the record leaves the matter in doubt, such evidence is admissible. * * * According to Coke, an estoppel must be certain to every intent, and if upon the face of the record anything is left to conjecture as to what was necessarily involved and decided, there is no estoppel in it when pleaded, and nothing conclusive in it when offered as evidence."

It is there further said by Burks, J.: "It does not appear by record upon what grounds the case was dismissed, whether upon the merits or upon some of the special causes of demurrer not involving the merits; and as no extrinsic evidence was furnished in the subsequent suit, if indeed any could be in such a case, showing the point involved and decided in the former suit, according to the authority of *Russell* v. *Place, supra,* 'the whole subject matter was at large and open to a new contention.'" See, also, *Ches. & O. Ry. Co.* v. *Rison,* 99 Va. 32, 37 S. E. 320.

It appears that appellant in his bill in his first suit made an error as to the time that appellee abandoned his home, he having fixed the date by that of the birth of their child, appellee having left appellant when her child was about one year old, and it turned out in the proof taken in the case that the child was born in March, 1906, instead of in

March, 1905, while the suit was brought in March, 1909; so that the desertion charged in the bill as the ground for a divorce *a vinculo* had not been for a period of three years, and therefore the bill had to be dismissed no matter what proof there was as to wilful desertion.   There is nothing in the record to discredit appellant's statement that in his first suit he made an honest mistake as to the date of appellee's abandonment of his home, and there is nothing in the record of the first suit, nor any extrinsic evidence in the present, which shows that the decree in the first suit was not based solely on the ground that three years had not expired from the date of the abandonment of the home of appellant by the appellee to the date of the institution of the suit.   This being the state of the record, the case comes directly within the doctrine laid down in the authorities cited above, and, therefore, the circuit court erred in sustaining appellee's plea of *res adjudicata.*

In our view of the case, the only remaining question requiring consideration is whether or not the circuit court, upon the evidence in the record, erred in denying appellant a divorce *a vinculo* and dismissing his bill.

The learned judge of the circuit court, in a written opinion made a part of the record, says, that "he (appellant) testifies to facts, which, if true, would fully warrant the court in granting him the relief he seeks," but the opinion then undertakes to show from the evidence in the first suit that his (appellant's) testimony is not worthy of belief.

In this view of the record we canot concur.   It is true that appellant in his first suit charged in his bill and testified that appellee abandoned him in 1905, about one year before she did in fact abandon him, but as we have stated there is nothing in the record to prove that this was not an honest mistake.   There is not the least question made in this present case that appellee had been away continu-

ously from appellant's home for a period of more than three years prior to the institution of the suit, and the only question for consideration is whether it is sufficiently proven that this desertion or abandonment is wilful—that is, without just cause.

The bills of complaint in both suits expressly waive answer under oath, but appellee saw fit to make oath to the last answer, and the oath thereto is certified as having been made in the city of Chicago, Ill. In her said answer she admits her marriage to appellant in December, 1900, but denies that "he made her a faithful and dutiful husband for five years," and this denial is made notwithstanding statements to the contrary made in the depositions given by her in the first suit. She was asked when giving her deposition: "Were the marriage relations between you and John L. Hairston pleasant, and if not, about what time did they become unpleasant?" Ans. "They were very pleasant until in 1905, he began to mistreat me." When called on to relate the mistreatment she had received, her reply was: "Well, his first mistreatment, he tried to force me to take the school ten miles from home down near Axton, in the fall of 1905." These facts are recited merely to show that for certainly five years and up to the latter part of 1905 appellee had no cause whatever for complaint of appellant's treatment of her. In May, 1906, and after the birth of her child in the preceding March, appellee with her child, upon being sent for by appellant, returned to his home, where she remained, except when away visiting friends or relatives, until September, 1907, at which time she left and, as she admits, has never returned to appellant's home, but instead brought a suit against him for a divorce a mensa et thoro, in which she failed.

The charges made by appellee against appellant of mistreatment of her, consisting of cruelty, neglect, non-support, and general personal abuse, are unsupported by any

evidence for her in this or the former suit, except the testimony given by herself in the first suit.    Living in a town, she, of course, had near neighbors and had also a sister living in the same town, with whom she spent a good deal of her time, yet no one beside herself was placed on the witness stand to prove one of her charges against appellant or to testify against his good character.    Reid Pannill, father of appellee, was on the witness stand in the first suit to testify as to when appellee's child was born, but he neither said nor was he asked anything about appellant's ill treatment of his daughter, nor did he say anything against the good character of appellant.

On the other hand, appellant testifies that he gave appellee no cause to leave him or to desert his home; that he fed and clothed her and her child, furnishing them with whatever appellee asked for, and that he was true to his marital vow, etc.    He denies emphatically that he ever drove appellee away from his home, and says that she left without just reason therefor and has never made any effort or offer to return to him.    He further alleges in his bill, as evidencing appellee's intent to leave his home and not to return, that she, without his consent or knowledge, had obtained a key to the drawer in which he kept his private papers and taken therefrom an interest-bearing certificate of deposit for $200 in a bank at Martinsville, belonging to him, which she afterwards changed or had some one else to change by prefixing the word "Mrs." to "John L. Hairston" and collected the money thereon at the bank in the absence of the cashier, a fact not known to appellant till after she had left his home.    This latter allegation is testified to by not only the appellant, but by the cashier of the bank.    Appellee in her answer admits that she got the money on the certificate of deposit, but claims that it was her own money.    There is, however, no proof offered in her behalf to sustain this claim, while it is proven by the books

of the bank and by the cashier of the bank, not only that at the date of the certificate of deposit in question this money belonged to appellant, but that appellee did not have an interest-bearing certificate issued by the bank for $200, nor is there any proof in the record that appellant ever deposited to his own credit in bank any money belonging to appellee.

In support of the allegation of appellant's bill that he gave appellee no cause to leave him or to desert her home, several witnesses who resided in the town of Martinsville and had known the parties to this controversy rather intimately for a number of years prior to their separation have testified.   Tilden Hairston states that appellee deserted appellant's home more than three years prior to the giving of his testimony and has never returned.   Letitia Mitchell states that appellee left her home in 1907, "moved her things away; she has never been back again that I have seen."   Witness was asked how far she lived from appellant's home, and whether or not she had ever heard of his driving his wife from home.   Ans. "I lived very near them, and I never heard of his driving her away from home, or saying anything unkind to her in my life."   W. L. Reynolds, who lived two and a half squares from appellant's home, bears witness to appellee's having left her home more than three years, and says that he never heard of appellant's "fussing or quarreling with his wife or driving her away from home."   Other witnesses testify as to appellee's habit of frequently going from home and staying at times as long as a month or more, and that from the time that she left the last time it had been more than three years.

The charges made by appellee against appellant in her answer, if true, would doubtless have entitled her to a divorce *a mensa et thoro,* but by · her own showing she brought a suit against appellant after leaving him praying for a divorce from him, and it was denied her.

"Desertion by one consort of the other can only be justified by showing such conduct on the part of the deserted party as would entitle the other to a divorce *a mensa*. Nothing short of this will justify a wilful desertion, or a continuance of it."

"Desertion is a breach of matrimonial duty, and consists of the actual breaking off of the matrimonial cohabitation, coupled with intent to desert in the mind of the offender." *Crounse* v. *Crounse*, 108 Va. 108, 60 S. E. 627.

In this case it is proven beyond question—in fact, it is not denied—that more than three years had elapsed from the time the appellee deserted the appellant to the time that this suit was instituted. That appellee had in mind an intent to desert and never to return to the home of the appellant is clearly shown, we think, by the facts proven and above adverted to, and which appellee has made no effort whatever to disprove or to discredit. When she made oath to her answer in this suit she was, as above mentioned, in the city of Chicago, Ill., and witnesses testifying for appellant and who reside in the town of Martinsville, say that they had no knowledge of her return from Chicago, and that she has certainly not been back to the home of appellant for more than three years.

It follows that we are of opinion that appellant is entitled to a divorce *a vinculo matrimonii* from appellee, in accordance with the prayer of his bill, and, therefore, the decree of the circuit court must be reversed, and the cause remanded for a decree to be entered therein in conformity with this opinion.

*Reversed.*